**UNITED STATES of America, Appellee,**

v.

**Wayne O. SOWERS, Defendant, Appellant.**

No. 97–1845.

United States Court of Appeals, First Circuit.

Heard Jan. 6, 1998.

Decided Feb. 6, 1998.

William Maselli, Auburn, ME, for defendant, appellant.

Margaret D. McGaughey, Assistant United States Attorney, Portland, ME, with whom Jay P. McCloskey, United States Attorney, Bangor, ME, and Jonathan A. Toof, Assistant United States Attorney, Portland, ME, were on brief, for appellee.

Before SELYA, Circuit Judge, COFFIN, Senior Circuit Judge, and SHADUR,* Senior District Judge.

SELYA, Circuit Judge.

Defendant-appellant Wayne O. Sowers challenges his conviction for possession of cocaine with intent to distribute, *see* 21 U.S.C. § 841(a)(1), (b)(1)(B), and (b)(1)(C) (1994), by resurrecting some—but not all—of the arguments advanced in his unsuccessful motion to suppress evidence.[1] In service of this end, the appellant argues that the trial court erred in concluding that neither the detention of the appellant and of a passenger in the vehicle that he was driving nor a warrantless search of the appellant's jacket, worn by the passenger, produced a cognizable constitutional insult. Concluding, as we do, that the district court properly denied the appellant's pretrial suppression motion, we affirm the judgment of conviction.

## I. BACKGROUND

On September 21, 1996, at approximately 10:00 p.m., Maine State Trooper Kevin Curran was traveling northbound along a desolate stretch of the Maine Turnpike. While passing a Toyota, he noticed a loud noise emanating from the vehicle's exhaust system.

His interest piqued, Curran also observed a missing front license plate. He slowed and activated his cruiser's blue flashing lights. The Toyota stopped in the breakdown lane.

Curran approached the vehicle from the rear and asked the operator (Sowers) for his papers. Sowers produced a valid license, along with a registration listing Tammy Gayton as the Toyota's owner. When Curran asked the young woman seated next to Sowers to produce some form of identification, she responded that she was Tammy Gayton, but acknowledged that she had nothing on her person to confirm that fact. Unsure as to the passenger's true identity, Curran instructed her to exit the vehicle and instructed Sowers to remain seated. Both complied.

After physically separating the two occupants, Trooper Curran noticed that they both appeared extremely nervous. He thus questioned each of them as to the extent, purpose, and details of their travels. When substantial discrepancies developed, his suspicions heightened.

Curran asked the woman to remain standing next to his police cruiser while he initiated a cursory background check, endeavored to verify her identity, and prepared citations for the defective muffler, *see* Me. Rev.Stat. Ann. tit. 29-A § 1912(1), (4) (West 1993), and the missing license plate, *see id.* § 452(a) (West 1987). The background check revealed that Sowers's driver's license was valid and that the Toyota was duly registered to Gayton. Curran also obtained a rough physical profile of Gayton, which seemed to match the woman whom he had detained.

Despite receipt of this information, Curran remained dissatisfied with the conflicting answers that he had received in response to his earlier questioning. He apprised Gayton of his lingering suspicions and sought permission to search her vehicle. Gayton initially refused to consent to a search, but eventually relented after Curran informed her that he would summon a narcotics dog to perform a

* Of the Northern District of Illinois, sitting by designation.

[1]. To the extent that arguments made at the suppression hearing are not renewed on appeal, we

deem them abandoned. *See United States v. Zannino,* 895 F.2d 1, 17 (1st Cir.1990).

sniff-search. After giving her written consent to the vehicle search, Gayton's anxiety became more pronounced.

Before attempting to search the vehicle, Curran radioed for assistance. While awaiting backup, Curran performed a pat-down search of Gayton's person. In the course of that search, he felt a hard, cylindrical object through the material of the jacket she was wearing. Curran queried Gayton about the item, but she disclaimed any knowledge, stating that neither the jacket nor its contents belonged to her. Curran removed the object from the jacket pocket. It proved to be a package containing a substance similar in appearance and consistency to cocaine. Curran promptly arrested both Sowers (age 42) and Gayton (age 18).

Trooper Frank Holcomb arrived on the scene at approximately 10:40 p.m. and Curran then searched the Toyota. He found no contraband. After the troopers transported the two suspects to the Androscoggin County Jail, Sowers admitted that he had traveled to Massachusetts and bought quantities of both powdered and crack cocaine.

## II. PROCEEDINGS BELOW

On October 10, 1996, a federal grand jury returned an indictment that charged Sowers with possessing or conspiring to possess powdered and crack cocaine, with intent to distribute. The appellant moved to suppress the evidence seized during and after the roadside events. He argued, *inter alia*, that the protracted investigative stop constituted an unlawful detention, and that in all events the pat-down search was unjustified. He also sought to exclude the incriminating statements made by him while in custody on the ground that those statements were the fruits of an illegal detention.

Following an evidentiary hearing, the district court denied the suppression motion. *See United States v. Sowers*, 1997 WL 97104

**2.** Although use of the term "standing" in this context may offend a legal purist, we have employed that word as "a shorthand method of referring to the issue of whether the defendant's own Fourth Amendment interests were implicated by the challenged governmental action." *United States v. Sanchez*, 943 F.2d 110, 113 n. 1 (1st Cir.1991); *accord United States v. Kimball*,

(D.Me. Feb. 21, 1997). The court ratified both the stop and the ensuing roadside detention, *see id.* at *4, and also determined that Sowers lacked standing to challenge the pat-down search, *see id.* at *5.[2]

In short order, a jury found the appellant guilty on two counts of the indictment.[3] The district court sentenced Sowers to a 46–month term of imprisonment. This appeal followed.

## III. DISCUSSION

In addressing orders granting or denying suppression, we scrutinize the trial court's factual findings for clear error and subject its ultimate constitutional conclusions to plenary review. *See Ornelas v. United States*, 517 U.S. 690, 698–700, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996); *United States v. Schaefer*, 87 F.3d 562, 565 & n. 2 (1st Cir.1996); *United States v. Zapata*, 18 F.3d 971, 975 (1st Cir.1994).

### A.

We open our discussion of the merits by addressing the appellant's charge that the officer's detention of the motorists amounted to a *de facto* arrest. Sowers carefully cabins this argument. He does not contest Judge Carter's finding that the initial stop, for admitted equipment violations, was justified. He argues instead that the length and tenor of the detention at some point transmogrified a lawful *Terry* stop, *see Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), into an unlawful *de facto* arrest. Once Sowers produced a valid driver's license and registration, this thesis runs, Curran no longer had any valid basis to detain the motorists and all the events that transpired thereafter—Gayton's removal from the vehicle, the subsequent questioning of both individuals, the pat-down search, the seizure of the contents of the jacket's pockets, the arrest, and

25 F.3d 1, 5 n. 1 (1st Cir.1994); *United States v. Gomez*, 770 F.2d 251, 253 n. 1 (1st Cir.1985); *United States v. Lochan*, 674 F.2d 960, 963 n. 4 (1st Cir.1982). We follow that praxis here.

**3.** The government had brought, and thereafter dropped, a conspiracy count.

the post-arrest interrogation—were beyond the pale.

■ The government says that Sowers lacks standing to voice much of this plaint. A defendant ordinarily cannot base a constitutional claim on a violation of a third person's rights. *See Rakas v. Illinois*, 439 U.S. 128, 138–40, 99 S.Ct. 421, 427–29, 58 L.Ed.2d 387 (1978); *United States v. Kimball*, 25 F.3d 1, 5 (1st Cir.1994); *United States v. Santana*, 6 F.3d 1, 8–9 (1st Cir.1993). Therefore, to the extent that Sowers's challenge rests on Gayton's privacy interests, it is barred.

■ Nonetheless, there is more to Sowers's challenge than meets the prosecution's eye. Once the police halt a vehicle on the highway, both the driver and the passengers are in a practical sense subject to the officers' authority. *See Whren v. United States*, 517 U.S. 806, 808–10, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89 (1996) (explaining that all occupants of a vehicle are subjected to a seizure, within the scope of the fourth amendment, when a police officer effects an investigatory stop of the vehicle). Thus, any one of them may challenge his own detention regardless of whether he was the immediate target of the investigation or whether he had a privacy interest in the vehicle itself. *See Kimball*, 25 F.3d at 5. This means that the appellant's challenge of his own detention is properly before us.

■ On this issue, the appellant acknowledges that *Terry* sanctions a brief detention of an individual to confirm or allay a police officer's reasonable suspicions. 392 U.S. at 20–21, 88 S.Ct. at 1879–80. Still, he contends that Trooper Curran's persistence converted an initially lawful *Terry* stop into a *de facto* arrest based on less than probable cause (and, hence, unlawful). This is a commonplace argument, the evaluation of which tends to be case-specific. *See Zapata*, 18 F.3d at 975 (observing that there are no precise formulae that enable courts to distinguish between investigatory stops and *de facto* arrests).

The effort to locate a particular sequence of events along the continuum of detentions begins with a determination as to whether the officer's actions were justified at the inception. *See Terry*, 392 U.S. at 19–20, 88 S.Ct. at 1878–79; *United States v. McCarthy*, 77 F.3d 522, 530 (1st Cir.1996). In this case, the propriety of the initial *Terry* stop cannot be gainsaid. The appellant's argument hinges, therefore, on whether the actions undertaken by the officer following the stop were reasonably responsive to the circumstances justifying the stop in the first place, as augmented by information gleaned by the officer during the stop. *See United States v. Sharpe*, 470 U.S. 675, 682, 105 S.Ct. 1568, 1573, 84 L.Ed.2d 605 (1985); *United States v. Stanley*, 915 F.2d 54, 55 (1st Cir.1990). To answer this query, an inquiring court must consider the totality of the circumstances and "balance[ ] the nature and quality of the intrusion on personal security against the importance of the governmental interests alleged to justify the intrusion." *United States v. Hensley*, 469 U.S. 221, 228, 105 S.Ct. 675, 680, 83 L.Ed.2d 604 (1985).

On this question, the district court supportably found that Curran's level of warranted suspicion gradually escalated as his encounter with Sowers and Gayton progressed. Based on unfolding events, the trooper's attention (and, thus, his reasonable suspicions) shifted away from the equipment violations that prompted the initial stop toward a belief that the detainees were engaged in more serious skulduggery. Such a shift in focus is neither unusual nor impermissible. *See, e.g., Zapata*, 18 F.3d at 974. In his testimony—which the lower court credited, *see Sowers*, 1997 WL 97104, at *4—Curran recited the particularized bases for his dawning belief that Sowers and Gayton were engaged in criminal misconduct. He pointed, for example, to Gayton's inability to confirm her identity, the pair's excessive nervousness, and the conflicting stories that they told. We are not at liberty blithely to second-guess the district court's credibility determinations. *See Zapata*, 18 F.3d at 975. Consequently we cannot say, in light of what the lower court found to be the circumstances obtaining on the night in question, that the officer's continued pursuit of his mounting suspicions was unreasonable. *See Davis v. United States* 409 F.2d 458, 460 (D.C.Cir.1969) (re-

marking that "conduct innocent in the eyes of the untrained may carry entirely different 'messages' to the experienced or trained observer"); *see also Stanley*, 915 F.2d at 56.

By the same token, we are not inclined to hold that Trooper Curran, in acting on these suspicions, perpetrated an impermissible *de facto* arrest. In assaying such a claim, a court must weigh, among other factors, the length of the detention, the restrictions placed on an individual's personal movement, the force (if any) that was exerted, the information conveyed to the detainee, and the severity of the intrusion. *See McCarthy*, 77 F.3d at 530. Here, no force—or show of force—occurred.[4] The restriction on Sowers's freedom of movement—namely, the trooper's instruction that he remain in the vehicle—was not onerous. *See, e.g., Maryland v. Wilson*, —— U.S. ——, ——, 117 S.Ct. 882, 886, 137 L.Ed.2d 41 (1997); *Pennsylvania v. Mimms*, 434 U.S. 106, 111, 98 S.Ct. 330, 333–34, 54 L.Ed.2d 331 (1977) (per curiam).

To sum up, the Supreme Court has cautioned that reasonable suspicion, like probable cause, is not amenable to technical formulations that purport to identify the precise types of conduct or sets of circumstances that will or will not permit a police officer to stop and detain an individual. *See Ornelas*, 517 U.S. at 695–96, 116 S.Ct. at 1661. To the contrary, the Justices have looked favorably upon a practical, commonsense approach to the issue of reasonable suspicion. *See id.* Viewing the facts of this case in a down-to-earth manner, we conclude that the district court did not err in finding that Curran had adequate justification to prolong the stop beyond the point at which Sowers produced his papers and thereafter beyond the point at which Gayton's identity was nominally corroborated. *See, e.g., United States v. Young*, 105 F.3d 1, 6 (1st Cir.1997); *McCarthy*, 77 F.3d at 530. Even though at least thirty minutes elapsed between the time of the stop and the discovery of what appeared to be contraband, we see no basis for disrupting

the district court's founded conclusion that no *de facto* arrest transpired. *See United States v. Quinn*, 815 F.2d 153, 157 (1st Cir. 1987) (remarking that "there is no talismanic time beyond which any stop initially justified on the basis of *Terry* becomes an unreasonable seizure under the fourth amendment") (quoting *United States v. Davies*, 768 F.2d 893, 901 (7th Cir.1985)); *see also McCarthy*, 77 F.3d at 530 (chronicling cases in which detentions of much longer duration than thirty minutes have been approved). Put another way, the court was not bound to hold that the relatively short-lived and, by all indicators, non-confrontational detention that preceded the officer's discovery of the apparent contraband constituted the functional equivalent of a formal arrest.

### B.

The appellant also challenges the pat-down search of Gayton, and in particular, the search of a jacket that he owned which Gayton was wearing at the time. The district court rejected this challenge. Relying on *Frazier v. Cupp*, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969), and *United States v. Alewelt*, 532 F.2d 1165 (7th Cir.1976), it concluded that the appellant, "upon lending his jacket to Gayton, relinquished control over the jacket and forfeited the reasonable expectation of privacy he had in the jacket." *Sowers*, 1997 WL 97104, at *5. Mindful that we are not chained to the lower court's rationale but may affirm on any alternative ground supported by the record, *see Hachikian v. FDIC*, 96 F.3d 502, 504 (1st Cir.1996), we choose to follow a different analytic path. Consequently, we take no view of the district court's determination that Sowers, having lent his jacket, could no longer claim a reasonable expectation of privacy vis-à-vis the contents of its pockets.

The fundamental flaw in the appellant's argument is that it misapprehends the character of a *Terry* stop. The pat-down search that a *Terry* stop entails is a search of the person. *See Terry*, 392 U.S. at 24–25, 88 S.Ct. at 1881–82 (describing the permitted

---

4. The appellant suggests that Curran's mention of a canine sniff-search amounted to a threat, and thus was a show of force. This argument never takes wing, however, because that conversation took place with Gayton, out of Sowers's earshot. Absent any communication, the "threat" could not have constituted a show of force *as to Sowers*.

pat-down search as "a limited search of the outer clothing for weapons" and recognizing that such a search "constitutes a severe, though brief, intrusion upon cherished personal security"); *see also* 4 Wayne R. Lafave, *Search and Seizure* § 9.5(b) (3d ed.1996). To say that such a search involves a separate and distinct search of the detainee's clothing distorts the *Terry* principle. Thus, the appellant, who was not himself subjected to the pat-down search, cannot bottom his Fourth Amendment challenge on that search. *See Kimball,* 25 F.3d at 5 (holding that "a proponent of a motion to suppress must prove that the challenged governmental action infringed upon his own Fourth Amendment rights"). So viewed, any possessory interest that Sowers retained in the jacket which Gayton was wearing during the search is an irrelevancy.

## IV. CONCLUSION

We need go no further. Having combed the record, we are fully persuaded that the district court did not err in denying Sowers's motion to suppress. The judgment of conviction must therefore be

*Affirmed.*