COFFIN, Senior Circuit Judge
(Dissenting).
I write separately to indicate my unease at the enhanced opportunity permitted by the court’s approach for stretching the limits of both Terry stops and consents to limited search under escalating pressures. Reviewing all the circumstances of this case, I find that each step in the investigative process was precariously close to the constitutional line and that the totality of these close calls points to impermissible excess.
The initial stop, for exceeding the speed limit and having a cracked windshield, is not at issue here. The first close call is the court’s holding that Trooper Rugen was justified in requesting that appellant procure registration or ownership papers for the Volkswagen, despite the fact that two minutes earlier, at 8:00 p.m., he had received word that appellant’s license was valid and that there were no outstanding warrants and no criminal history. Without an objectively reasonable suspicion, the detention would have been invalid. The objectively reasonable basis, the court decides, was the unlikelihood of a thirty-year-old Volkswagen pickup truck being worth the cost of being towed across the United States for sale in New Hampshire, the fact that southern California was known as a source for drugs, and Rugen’s curiosity about the space behind the cab. The court so finds despite Rugen’s testimony that he had no reasonable suspicion at the time he ordered a canine search at 8:00 p.m. and the district court’s statement that, as of 8:11 p.m., “the police had plenty of curiosity but no ‘articulable suspicion.’ ”
If this detention falls within permissible limits, its justification is at best marginal. To elevate Rugen’s vague hunches to the level of a particularized or articulable suspicion of criminal activity is a stretch.
Next is Trooper Rugen’s admitted delay in finishing his paperwork in order to allow the dog to complete its walk. Rugen asked no fewer than fifteen questions of appellant during this delay, which he characterized as “just making conversation.” See United States v. Pruitt, 174 F.3d 1215, 1221 (11th Cir.1999) (irrelevant “ ‘fishing expedition’ ” questions violated Terry). It was not until 8:11 p.m., after the canine *50 had finished its walk and eleven minutes after Rugen had received clearance on appellant, that Rugen handed appellant his license and registration and said he was “free to leave.”
Yet just three seconds after giving him clearance to leave, Trooper Rugen asked if appellant “would mind” if he looked at the engine compartment. I suspect that the close coupling of permission to leave with an ingratiating request to inspect (“I have never seen a truck like that before.... ‘Course I’m only 31 years old.”), in the presence of two eager troopers and the dog, throws doubt on the voluntariness of any manifestation of consent, but appellant has not expressly raised voluntariness of his consent as an issue before us.
Nevertheless, appellant’s contention that the searches exceeded the scope of consent raises several concerns. To start with, there is difficulty with the search of the “engine compartment.” The court has described the troopers’ resort to a screwdriver and their look inside the compartment immediately after appellant’s affirmative answer to the “do you mind” request. The consented-to search of the engine compartment extended beyond the clearly delineated engine compartment to include prodding, tapping, banging, stepping up and crouching down, and even opening the Volkswagen’s side panels. Trooper Rugen justified his extended search by contending that he was unclear as to the precise location of the engine compartment. Regardless of whether this professed confusion was objectively reasonable, he failed to clarify what area he had been given consent to search. Under these circumstances, at a minimum, “the scope of [appellant’s] consent was ambiguous — an ambiguity that could have been but was not clarified by further inquiry.” United States v. Infante-Ruiz, 13 F.3d 498, 505 (1st Cir.1994).
Within two minutes of appellant’s consent to search “the engine compartment,” Rugen asked if he could look in the Volkswagen’s cab. As the court reports, the answer was inaudible. The court states that “the videotape suggests that Horn-becker consented.” I assume that this means that appellant did not protest.
At this point, after playing fast and loose with the first limited consent, then displaying forceful determination to continue the job and following with another request to examine a specific place, should not the officers have paused to make sure that consent was forthcoming and unequivocal? I fear that the court’s opinion will serve to encourage scenarios of familiarity leading to limited consent, followed by a sequence of escalating intrusions resulting in an abandonment of any limits to the scope of a search, all sanitized by continuing to infer consent.
As if all this were not enough, Rugen admitted that after finding nothing suspicious in the consented-to search of the cab, he began to move around the vehicle more. Rugen then requested that appellant open the gas port, admitting at trial that he was not asking permission. Appellant indicated that a screwdriver could be used here, too. This viewing at last yielded something — the realization that neither the engine nor the gas tank occupied the space that in Rugen’s mind, apparently, appellant had been questioned about.
The search for a principled basis for decision in such a case as this is made complex by the fact-specific issue of reasonableness underlying the Fourth Amendment. But I find a benchmark in comparing this case with two of our automobile investigative stop cases, relied on heavily by the government, United States v. Chhien, 266 F.3d 1 (1st Cir.2001), and United States v. Sowers, 136 F.3d 24 (1st Cir.1998). In Chhien, the sequence of *51 events began with the customary traffic violation, then a consensual pat-down yielding a large wad of money, leading to a few questions and inconsistent answers, followed by suspicious movements of a passenger in the car, refusal to open a clenched fist, and, finally, when the passenger was removed from the car, contraband in plain view. Chhien, 266 F.3d at 4-5. In Smvers, there were signs of nervous behavior at the start, substantial discrepancies in answers to simple travel questions, a written consent to search, and a pat-down yielding a package of contraband. Sowers, 136 F.3d at 25-26.
Those cases seem to me soundly decided, but debatable. If they are at or near the line, this one is well beyond it. This is a case where each discrete act of the troopers, if looked at through a narrow lens, may pass muster. But how many such close calls may be made without tainting the final decision? Is it enough to say that a straw is just a straw without worrying when one more straw will break the camel’s back? I am left with a profound feeling that in this case the officers “pushed the envelope” too far and that our affirming the district court could be interpreted as an Open Sesame to law enforcement to prolong Terry stops, require irrelevant information and documents, establish an atmosphere of coziness that ultimately suffocates an individual’s freedom to choose, ask for limited permission to search, and then subtly overreach its scope and interpret coerced acquiescence as implied consent.
I therefore would reverse the judgment of the district court and order that it suppress the drugs found in the Volkswagen.