# United States Court of Appeals
## For the First Circuit

No. 16-1436

UNITED STATES OF AMERICA,

Appellee,

v.

ROBERT ORTH,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Steven J. McAuliffe, U.S. District Judge]

Before

Torruella, Kayatta, and Barron,
Circuit Judges.

Jaye L. Rancourt and Brennan Lenehan Iacopino & Hickey, on brief for appellant.
Seth R. Aframe, Assistant United States Attorney, and Emily Gray Rice, United States Attorney, on brief for appellee.

October 13, 2017

**TORRUELLA**, **Circuit Judge**.  Appellant Robert Orth ("Orth" or "Appellant") appeals the district court's denial of his motion to suppress drugs, a digital scale, and a firearm obtained following a traffic stop of the vehicle in which he was a passenger.  After careful consideration, we affirm.

## I.   Background and Procedural History

"[W]e view the facts in the light most favorable to the district court's ruling on the motion," and review its "findings of fact and credibility determinations for clear error."  United States v. Fields, 823 F.3d 20, 25 (1st Cir. 2016) (quoting United States v. Fermin, 771 F.3d 71, 76 (1st Cir. 2014)).  At the suppression hearing, Officer Dennis Lee ("Officer Lee") of the Nashua Police Department testified that on May 29, 2014, at just before 10:00 p.m., he observed a vehicle fail to stop at a stop sign.  He followed the vehicle and observed it straddle the double yellow line, activate its left turn signal, stop in the middle of the roadway, and then turn on its right turn signal and veer to the right side of the road.  Officer Lee subsequently initiated a traffic stop.

Officer Lee testified that the area in which the stop occurred had a reputation for criminal activity, although he did not provide any further specifications.  He further testified that he had a suspicion that the driver of the vehicle may have been

-2-

intoxicated. Officer Lee pulled the vehicle over and parked his cruiser behind it. Before approaching, Officer Lee shined his spotlight on the car and noticed two of the occupants in the car turn to look directly at him with a "deer-in-the-headlights look," which he described as a look of nervousness and surprise beyond what was normal. As he approached the vehicle, he observed that there were a total of three occupants. He later determined that Dustin Adams ("Adams") was the driver, the appellant, Orth, was the front passenger, and Michael Ashford ("Ashford") was the rear passenger. Officer Lee asked Adams for his license and registration. Adams provided his license but did not provide his registration. When Officer Lee asked Adams to check the glove compartment of the vehicle for his registration, Adams refused to do so.

While speaking to Adams, Officer Lee noticed a "large black cylinder item" resting in between Orth's leg and the vehicle's center console. Concerned that it could be a weapon, Officer Lee asked Adams to identify the object. Adams did not answer Officer Lee's question. After Officer Lee repeated the question, Orth "became noticeably aggressive . . . verbally" towards Officer Lee, saying "It's an F-ing flashlight" as he picked the object up to reveal that it was a large flashlight. Because of the number of men in the vehicle, Orth's aggressive behavior,

and Officer Lee's ongoing concern that the flashlight could be used as a weapon, he requested backup.

After requesting backup, Officer Lee asked Adams to step out of the vehicle. Officer Lee ordered Orth and the rear passenger, Ashford, to "place their hands where [he] would be able to see them," specifically ordering Orth to put his hands on the dashboard. Ashford complied, but Orth did not and began shouting profanities. After Officer Lee's repeated instructions, Orth finally complied. Officer Lee asked Adams if he was in possession of any weapons, to which Adams replied that he was not. Officer Lee pat-frisked Adams and discovered a large utility knife in his pocket that Adams stated was for construction work. While Officer Lee was pat-frisking Adams, Orth continued to protest. At one point, Orth took his hands off of the dashboard and made furtive movements as he reached towards the floorboard of the vehicle. Officer Lee yelled for Orth to place his hands back on the dashboard, which Orth reluctantly did. At this time, a second officer arrived on the scene. Officer Lee then directed Ashford to exit the vehicle and pat-frisked him, which did not reveal any weapons. Orth continued to verbally protest.

Finally, Officer Lee approached the front passenger door and ordered Orth out of the vehicle, after which Orth recommenced his protests. Officer Lee testified that he observed "sweat

-4-

beading off of [Orth's] forehead," which he found odd because it was a cool May night. Officer Lee pat-frisked Orth and did not discover any weapons. After pat-frisking Orth, Officer Lee instructed Orth to stand away from the passenger door so that Officer Lee could search the vehicle, "to ensure that there [were] no weapons within his reach." Orth stepped towards Officer Lee and stated that the officer could not search the vehicle. As Officer Lee approached the vehicle door, Orth tried to close the door on him. The officer again instructed Orth to step back and approached the car door, and again Orth tried to close it on him. Officer Lee told Orth that he was going to place him in handcuffs for safety, but Orth resisted and pushed Officer Lee in the chest. At this time, Officer Lee informed Orth that he was under arrest and attempted to place him in handcuffs. Orth resisted. While both officers attempted to restrain him, Orth yelled to his fellow passengers to "get the shit, get the shit, run and hide it." Adams reached towards the floorboard of the front passenger seat where Orth had been sitting, grabbed a jacket, and began to flee. Officer Lee pursued Adams while the second officer stayed behind and secured Orth. As he fled, Adams tripped and dropped the jacket, and then discarded it in the middle of the roadway. Upon picking up the jacket, Officer Lee could tell by the weight that there was something inside of it, which he suspected to be a gun.

-5-

Upon later examination, he found a loaded pistol, a digital scale, and 248 grams of heroin.

Orth was charged with possession of heroin with intent to distribute, in violation of 21 U.S.C §§ 841(a)(1), 841(b)(1)(B)(i); possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i); and possession of a firearm by a prohibited person, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2). Orth moved to suppress the evidence, arguing that it was obtained through an illegal search and pat-frisk. After an evidentiary hearing, the judge denied the motion, finding that the pat-frisk was warranted. Orth pled guilty to all three counts but reserved the right to appeal the denial of the motion to suppress. He was sentenced to 120 months of imprisonment.

On appeal, Orth contends that the district court erred by denying his motion to suppress as Officer Lee lacked reasonable suspicion to warrant pat-frisks of the occupants of the vehicle, and therefore unlawfully extended the traffic stop beyond the scope of its initial purpose. Orth also argues that Officer Lee lacked reasonable suspicion to search the interior of the vehicle, further unlawfully extending the traffic stop, in violation of the Fourth Amendment. Finally, he argues that Adams's removal of the jacket from the vehicle did not supersede the Fourth Amendment violations.

-6-

To support his argument, Orth specifies four factors that Officer Lee testified about and argues that, in the totality of the circumstances, they were insufficient to justify the removal and pat-frisk of the three men.

## II. Discussion

### A. Standard of Review

We review de novo the district court's ultimate legal decision to grant or deny a motion to suppress, including its application of the law to the facts and its probable cause and reasonable suspicion determinations. Fields, 823 F.3d at 25 ("When reviewing a challenge to the district court's denial of a motion to suppress . . . [w]e review conclusions of law . . . de novo.") (internal citations omitted); see United States v. Crespo-Ríos, 645 F.3d 37, 41 (1st Cir. 2011).

The boundaries of an investigatory stop and frisk were first delineated in the Supreme Court's landmark decision in Terry v. Ohio:

> [W]here a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that persons with whom he is dealing may be armed and presently dangerous . . . and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.

-7-

392 U.S. 1, 30 (1968). Our review of a Terry pat-frisk requires a two-part analysis: first, whether the initial stop was justified; and second, whether the police had a legal basis to justify an investigation beyond the scope of the reason for the stop itself. United States v. Mouscardy, 722 F.3d 68, 73 (1st Cir. 2013) (citations omitted). A stop's validity is, by itself, insufficient; "the key is whether, under the circumstances, 'the officer is justified in believing that the person is armed and dangerous to the officer or others.'" United States v. Cardona-Vicente, 817 F.3d 823, 827 (1st Cir. 2016) (quoting United States v. Romain, 393 F.3d 63, 71 (1st Cir. 2004)). The crux of the analysis relies on the reasonableness of the officer's actions, in light of the "totality of the circumstances," which must "provide[] a particularized, objective basis for the officers' suspicion that [the defendant] was dangerous and posed a threat to their safety." United States v. McKoy, 428 F.3d 38, 40 (1st Cir. 2005).

Both parties agree, as did the district court, that the initial stop was lawful. Officer Lee observed the vehicle commit a series of traffic violations that provided probable cause to conduct a traffic stop. The parties' agreement, clearly supported by the record, concludes the first step of our analysis. Having found the initial stop of the vehicle justified, we proceed to the second step of the analysis: whether the totality of the

circumstances provided a particularized objective basis for Officer Lee's suspicion that the defendant was armed and dangerous. We address the appellant's arguments in turn.

**B. Extension Beyond the Initial Purpose of the Stop**

Appellant first argues that the lawful traffic stop was unlawfully extended beyond its initial purpose when each passenger was taken from the vehicle, pat-frisked, questioned, and placed back in the vehicle. In so alleging, Appellant claims that the district court erroneously focused solely on the disputed length of time that it took Officer Lee to conduct the actual frisks of each passenger, whereas the proper inquiry is the reasonableness of any extension of the scope of the stop. While the district court did engage with defense counsel during the suppression hearing about the length of time that it took Officer Lee to conduct the traffic stop, this back-and-forth's purpose was clearly to allow the motion judge to clarify defense counsel's "unlawful extension" argument. In fact, soon after this dialogue, the motion judge bluntly asked defense counsel, "So what's your argument then? Fruit of the poisonous tree or unlawful extension of the duration necessary to resolve the traffic stop? . . . [Y]ou keep conflating [those two arguments]." The district court then stated its belief that Officer Lee reasonably extended the traffic stop beyond its original scope because he had reasonable suspicion

to pat-frisk the car's occupants. Thus, we disagree with Appellant; the district court did not erroneously focus solely on the duration of the stop in assessing the reasonableness of its extension.

We recognize that, as Appellant alleges, the scope of the traffic stop changed and evolved from Officer Lee's initial drunk-driving investigation. However, the circumstances and unfolding events during a traffic stop allow for an officer to "shift his focus and increase the scope of his investigation by degrees" with the accumulation of information. United States v. Chhien, 266 F.3d 1, 6 (1st Cir. 2001). An officer's actions must be justified at their inception, and any subsequent actions are measured by the "emerging tableau" of circumstances as the stop unfolds. Id. Our review of whether Officer Lee's extension of the scope of the initial stop and his subsequent actions were reasonable brings us to Appellant's second (related) argument.

## C. Pat-Frisk of Appellant

Appellant wisely does not challenge the extension of the stop to allow for the arrival of a second officer to assist. Officer Lee testified that, approximately two minutes after he initiated the stop, he called for backup because he was dealing with an aggressive passenger (Orth), and a driver that was not willing to speak to him (Adams). Further, and especially in light

of the number of occupants in the vehicle, we find reasonable what Officer Lee described as a common practice within the department to conduct field sobriety tests with two officers. The district court credited Officer Lee's testimony, a determination that we review for clear error. United States v. Garner, 338 F.3d 78, 80 (1st Cir. 2003). We find none; calling for the assistance of a second officer was unquestionably reasonable in the situation presented.

Appellant does contend, however, that the stop was unreasonably extended as there was no reasonable suspicion that the persons pat-frisked were armed and dangerous. Evaluating whether an officer's suspicions were reasonable is a fact-specific task, Chhien, 266 F.3d at 8, requiring some level of "deference . . . to the experienced perception of the officers." Cardona-Vicente, 817 F.3d at 827. The court cannot evaluate reasonable suspicion in a vacuum; it must "make[] due allowance for the need for police officers to draw upon their experience and arrive at inferences and deductions that 'might well elude an untrained person.'" United States v. Arnott, 758 F.3d 40, 44 (1st Cir. 2014) (quoting United States v. Arvizu, 534 U.S. 266, 273 (2002)). Of course, such deference is not without bounds. See Ornelas v. United States, 517 U.S. 690, 699 (1996) (reviewing court must give

"due weight" to factual inferences drawn by local law enforcement officers).

Both parties quarrel over the reasonableness of Officer Lee's pat-frisk of the driver. Appellant opines that Officer Lee lacked the requisite reasonable suspicion necessary to warrant the initial pat-frisk of Adams and the subsequent pat-frisks of Ashford and Orth, because the reasons Officer Lee gave to justify his reasonable suspicion were insufficient. Appellant cherry-picks four factors about which Officer Lee testified, dissecting why each, individually, cannot give rise to reasonable suspicion: (1) high crime neighborhoods; (2) the suspicious behavior of the occupants; (3) the flashlight; and, (4) Orth's furtive hand movements. Appellant concludes that the totality of the circumstances does not suggest that criminal activity was afoot, or that the passengers of the vehicle posed a threat to the officer. The government disputes this conclusion, positing that ample reasonable suspicion justified the pat-frisk of Adams.

We refrain from intervening in this initial squabble as Appellant lacks standing to challenge the pat-frisks of both Adams and Ashford. See Rakas v. Illinois, 439 U.S. 128, 138-140 (1978); United States v. Sowers, 136 F.3d 24, 27 (1st Cir. 1998); United States v. Kimball, 25 F.3d 1, 5 (1st Cir. 1994) ("Fourth Amendment rights are personal, and a proponent of a motion to suppress must

-12-

prove that the challenged governmental action infringed upon his own Fourth Amendment rights.") (citations omitted). Thus, we exercise judicial avoidance as to the specific justification underlying the pat-frisk of the driver of the car. That pat-frisk occurred while waiting for the second officer to arrive for backup assistance, which we have previously stated was reasonable in this situation. Thus, it did not further lengthen the duration of Appellant's detention. Appellant is not left without a leg to stand on, however. Once an officer conducts a traffic stop, the driver and all passengers are subject to the authority of the stopping officer and thus are all seized for Fourth Amendment purposes. See Whren v. United States, 517 U.S. 806, 808-10 (1996) (all occupants of a vehicle are subjected to a seizure within the scope of the Fourth Amendment when an officer conducts an investigatory stop). As Appellant was seized, he may challenge his own detention. Sowers, 136 F.3d at 27.

After review, we hold that the district court correctly found that, given the totality of the circumstances, Officer Lee had reasonable suspicion to justify Appellant's prolonged detention and pat-frisk. The district court highlighted the escalation of Officer Lee's warranted suspicion as the encounter unfolded. "Such a shift in focus is neither unusual nor impermissible." Id.

-13-

After lawfully stopping the vehicle in a high crime area, Officer Lee witnessed what he described as nervous and suspicious behavior from the occupants of the vehicle. While Appellant questions why the officer found certain of the vehicle occupant's actions to be unusual, the district court found the officer credible. Absent clear error, "we are not at liberty blithely to second-guess the district court's credibility determinations." Id. We see no error in this credibility determination, nor does Appellant point to anything in the record that shows that this finding was clearly erroneous. Turning back to see who is shining a spotlight into one's car may not, by itself be unusual behavior, cf. United States v. Wright, 582 F.3d 199, 226 (1st Cir. 2009) (Lipez, J., dissenting) ("[c]hecking out the occupants of a car that has stopped near one's own is an everyday act that by itself is not suggestive of criminal conduct"), but when considered along with Adams's extreme nervousness, his quick answers to some of the officer's questions, his refusal to check the glove compartment for the vehicle's registration, his hesitation and ultimately odd response to related questions about the purpose of the flashlight ("for sport"), and Orth's body language and displayed aggression, such a conclusion is justified.

Appellant's dismissal of Officer Lee's testimony that the location of the stop was a "high crime area" is also to no

avail.  Appellant avers that Officer Lee provided no specific information as to why he classified this area as "high crime," and correctly points out that just because a stop occurs in a high crime area does not, in and of itself, justify the prolonged detention of Appellant.  "[T]he character of the neighborhood does not provide automatic permission for [the police] to stop and search any and everybody in a high-crime neighborhood."  United States v. Soares, 521 F.3d 117, 121 (1st Cir. 2008).  However, Officer Lee did not testify that the high crime area was his only reason for extending the stop.  Rather, the neighborhood's crime rate acted with a confluence of other factors to form the officer's reasonable suspicion.  Much like in Soares, which Appellant claims this case falls short of, "the police here relied on more than just nervousness and the fact that they stopped the car in a high-crime neighborhood."  Id.; see also McKoy, 428 F.3d at 40 ("While police are permitted to take the character of a neighborhood into account . . . it is only one factor that must be looked at alongside all the other circumstances when assessing the reasonableness of the officer's fear.").

Similarly, the presence of the oversized flashlight does not directly establish reasonable suspicion that an occupant may be armed.  However, the presence of a large flashlight, combined with the aforementioned hesitation and odd response to questions

about its presence, contributed to Officer Lee's reasonable conclusion that the occupants could use it as a weapon against him. Appellant's argument that Officer Lee could have simply taken possession of the flashlight if he was concerned about his safety, thus relieving himself of all worries, is also not persuasive. The point is that its presence and the car occupants' evasiveness contributed to the totality of the circumstances to create Officer Lee's reasonable suspicion that the occupants may be armed.

This brings us to Officer Lee's pat-frisk of Adams, during which Officer Lee discovered a large cutting or utility knife. Prior to moving on, we find it prudent to reiterate that Appellant lacks standing to challenge the search of the driver. Sowers, 136 F.3d at 27. One cannot base a constitutional claim on a violation of a third person's rights; therefore, to the extent that Appellant's challenge rests on Adams's privacy interest, it is barred. Id. Prior to pat-frisking Adams, Officer Lee instructed both Orth, who had already displayed signs of aggression, and Ashford to keep their hands in the Officer's sight. Officer Lee then asked Adams if he had any weapons in his possession, to which Adams answered that he did not. During the search, Officer Lee discovered a large cutting knife in Adams's pant pocket. While Adams indicated that it was for construction

work, it understandably concerned Officer Lee that Adams had not mentioned the presence of a knife when asked. Appellant attempts to make hay of the argument that, because this was potentially a tool used in Adams's course of employment, he may not have considered it to be a "weapon" when questioned by Officer Lee. However, we fail to see how a large cutting knife does not constitute a potential weapon simply because it has other legitimate purpose, see Wright, 582 F.3d at 213 ("[A] Terry stop is permitted even if the conduct justifying the stop was ambiguous and susceptible of an innocent explanation . . . . [T]he very purpose of [Terry] stops is to clarify ambiguous situations.") (internal quotations omitted), and why an individual's failure to alert an officer to its presence should not contribute to a finding of reasonable suspicion.

Finally, during this search, Officer Lee specifically told Appellant to keep his hands on the dashboard of the car. Appellant initially did not comply, becoming more argumentative and yelling profanities. After Appellant finally complied, Officer Lee began his pat-frisk of Adams, during which Officer Lee witnessed Appellant remove his hands from the dashboard and reach to the floorboard area of his seat. Appellant insists that, if Officer Lee were truly concerned about his movements and that he possessed a weapon then Officer Lee would have immediately removed

him from the vehicle and not have waited to search him last. Appellant thus contends that this shows these hand movements did not occur, and that they were an after-the-fact justification by the officer. However, Officer Lee gave adequate justification at the suppression hearing that the order in which he pat-frisked the car's occupants was operational, and that by pat-frisking the rear passenger first, he was able to ensure that no one behind him was armed when he pat-frisked Appellant. At any rate, Appellant's argument ultimately turns on Officer Lee's credibility and, as stated previously, we find nothing clearly erroneous in the district court's decision to credit Lee's testimony.

The totality of the circumstances favors reasonable suspicion, Appellant's arguments to the contrary notwithstanding. The factors as outlined above, when amassed, gave Officer Lee more than adequate reasonable suspicion to pat-frisk Appellant.

**D. Search of the Vehicle**

Appellant's final argument[1] is that the traffic stop was unlawfully extended when Officer Lee attempted to search the car.

---

[1] Appellant attempted to forecast a response by the government that there existed a superseding cause sufficient to attenuate a Fourth Amendment violation in regards to the removal of the jacket from the vehicle. In doing so, Appellant states that there was no intervening criminal conduct which may have superseded a possible violation. See United States v. Camacho, 661 F.3d 718 (1st Cir. 2011).

At the heart of this argument is the assumption that the

-18-

"[T]he search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief . . . the suspect is dangerous and the suspect may gain immediate control of weapons." Michigan v. Long, 463 U.S. 1032, 1049 (1983). In Long, the Supreme Court found that the officers were justified "in their reasonable belief that [the defendant] posed a danger if he were permitted to reenter his vehicle," which permitted a limited search of the passenger compartment of the vehicle. Id. at 1050.

In the instant case, we have already found that Officer Lee was justified in removing Appellant from the vehicle and conducting a pat-frisk. We have further found that the circumstances of the stop were sufficient for Officer Lee to develop a reasonable suspicion that a weapon could possibly be hidden in the car. At the start of the stop, Adams refused to check the glove box in an effort to find his registration. While conducting pat-frisks of the other occupants, Appellant ignored directions from Officer Lee by removing his hands from the dashboard and reaching towards the floorboard of the vehicle.

---

original search was in violation of the Fourth Amendment. Because Officer Lee possessed reasonable suspicion to pat-frisk Appellant and search the vehicle, we need not further address this issue.

Officer Lee's concern about his safety was further cemented after finding a knife on Adams following Adam's denial that he had any weapons on his person. These factors gave reason for Officer Lee to "increase the scope of his investigation by degrees." Chhien, 266 F.3d at 6. Officer Lee's reasonable suspicion that the occupants possibly possessed a weapon would have logically included the possibility that a weapon could be easily accessed from the passenger compartment of the car.

In United States v. Lott, by contrast, this Court found that the officers involved in a traffic stop did not have reasonable suspicion to search a car for weapons when they did not bother to frisk the defendants at any time prior to searching the vehicle. Compare 870 F.2d 778, 785 (1st Cir. 1989), with United States v. McGregor, 650 F.3d 813, 822 (1st Cir. 2011) (officers frisked each passenger prior to searching the car for weapons). However, unlike in Lott, it is clear that Officer Lee was concerned about the presence of a weapon well before attempting to search the car.

Moreover, the fact that Appellant had been removed from the car does not hinder the legality of a search of the passenger compartment. "Conducting a protective sweep of the passenger compartment for the weapon [is] permissible" after the creation of reasonable suspicion "even though [the defendant is] outside the

vehicle and under police control." United States v. Díaz, 519 F.3d 56, 62 (1st Cir. 2008). The scope of such a search would encompass the area "generally 'reachable without exiting the vehicle' . . . including areas that are 'hatches,' or rear storage areas." United States v. Allen, 469 F.3d 11, 15 (1st Cir. 2006) (quoting United States v. Doward, 41 F.3d 789, 794 (1st Cir. 1994) (internal citation removed) (emphasis omitted)). In the course of a stop, "police may also examine the contents of any containers found within the passenger compartment" as they are potentially reachable. New York v. Belton, 453 U.S. 454, 460 (1981) (abrogated on other grounds by Davis v. United States, 564 U.S. 229 (2011)); see also McGregor, 650 F.3d 813 (holding that using a found magnet switch to search secret compartments, tapping on the car's undercarriage, prodding at the cup holder and emptying the center console were within the scope of a Terry-related search of a vehicle). The scope of searchable containers encompasses "glove compartments, consoles, or other receptacles . . . as well as luggage, boxes, bags, clothing, and the like." Belton, 453 U.S. at 460-61 n.4.[2] Thus, the jacket in which the evidence was found

---

[2] A trunk is not considered a part of the passenger compartment and thus is not within the scope of a search. Belton, 453 U.S. at 460 n.4. An exception to this rule exists, however, if the trunk, hatch, or "rear storage areas" are accessible from the passenger compartment. Allen, 469 F.3d at 15.

-- which was located on the floorboard of the passenger seat where Appellant had been sitting at the time Officer Lee began his protective sweep of the passenger compartment -- was well within the scope of such a search. Adams's subsequent removal of the jacket and flight prior to Officer Lee's search does not change the jacket's status.[3]

To conclude, we find that the district court correctly denied Appellant's motion to suppress. We find no clear error in the motion judge's findings of fact and credibility determinations and agree that suppression of the evidence was not warranted.

### III.  Conclusion

The district court properly denied Appellant's motion to suppress the firearm, digital scale, and drugs. Accordingly, the judgment of the district court is affirmed.

**Affirmed.**

---

[3]  We note that the actions of the car's occupants -- Orth yelling to his co-occupants to "get the shit, get the shit, run and hide it," Adams grabbing the jacket from the very same place where Officer Lee saw Orth make furtive hand movements, and Adams subsequently fleeing and discarding the jacket -- may have established an independent basis of probable cause to search the jacket. However, given that the government did not raise this argument, it is deemed waived and we need not decide that issue. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (referring to "the settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived").