NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12342


COMMONWEALTH  vs.  ANTHONY F. MANHA.



Suffolk.    December 5, 2017. - February 28, 2018.

Present:  Gants, C.J., Lenk, Gaziano, Lowy, Budd, Cypher, &
Kafker, JJ.


Constitutional Law, Search and seizure, Investigatory stop,
    Reasonable suspicion. Search and Seizure, Reasonable
    suspicion, Threshold police inquiry, Protective sweep.
    Threshold Police Inquiry.



Complaint received and sworn to in the South Boston
Division of the Boston Municipal Court Department on July 10,
2012.

A pretrial motion to suppress evidence was heard by Ernest
L. Sarason, Jr., J., and following transfer to the Central
Division of the Boston Municipal Court Department, the case was
tried before Tracy-Lee Lyons, J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.


Leah Hook for the defendant.
Cailin M. Campbell, Assistant District Attorney, for the
Commonwealth.

BUDD, J.  Here we address the authority of the police to stop and perform a <u>Terry</u>-type search of a motor vehicle after an anonymous 911 caller reported that the driver of that vehicle threatened the caller, a fellow motorist, with a gun.  The driver, defendant Anthony F. Manha, appeals from a conviction of assault with a dangerous weapon.  The Appeals Court affirmed in an unpublished memorandum and order pursuant to its rule 1:28. <u>Commonwealth</u> v. <u>Manha</u>, 91 Mass. App. Ct. 1105 (2017).  We granted the defendant's application for further appellate review.  He claims that the police lacked probable cause to stop him and that, therefore, the pellet gun found subsequently in his vehicle should have been suppressed.  We conclude that, in these circumstances, the information that the police possessed gave them reasonable suspicion to stop and perform a protective sweep of the defendant's motor vehicle, and that, given the officers' safety concerns, reasonable suspicion was all that was required.  We therefore affirm the conviction.

<u>Background</u>.  We present the facts as found by the motion judge.  On July 9, 2012, while on patrol, Trooper John Guest of the State police received a radio call of a then-ongoing 911 call from a motorist regarding a road rage incident.  According to the 911 caller, an individual in another motor vehicle had pointed a gun at her as she traveled southbound on Route 93 in Boston.  She described the gunman as a white male in his forties

who was wearing glasses. She further provided a description of his vehicle, a gray Jeep Cherokee, along with its registration number, location, and direction of travel.

Based on this information, Guest located the vehicle and followed it for a few miles (observing no traffic violations or other criminal activity) before signaling to the driver to stop. Guest and two other troopers who had since arrived drew their weapons and ordered the driver, the defendant, to get out of the vehicle. A patfrisk of the defendant's person revealed no weapons. The troopers placed the defendant in a police vehicle and performed a protective sweep of the Jeep. In the rear area of the vehicle they discovered a black case. Inside they found a pellet gun in the shape of a hand gun.

Discussion. In our review of the denial of the defendant's motion to suppress, we accept the motion judge's factual findings unless clearly erroneous, and independently apply the law to those findings to determine whether actions of the police were constitutionally justified. See Commonwealth v. Molina, 467 Mass. 65, 72 (2014); Commonwealth v. Wilson, 441 Mass. 390, 393 (2004).

1. Reasonable suspicion for stop. To perform an investigatory stop of a vehicle, the police require "reasonable suspicion, based on specific, articulable facts and inferences therefrom, that an occupant . . . had committed, was committing,

or was about to commit a crime." Commonwealth v. Anderson, 461 Mass. 616, 621, cert. denied, 568 U.S. 946 (2012), quoting Commonwealth v. Alvarado, 423 Mass. 266, 268 (1996).  In this case, the caller reported that another motorist pointed a gun at the caller while she was traveling on a busy highway.

Where an officer receives an order to stop a vehicle based on the information received via a police radio broadcast, the Commonwealth must show the particularity of the vehicle's description and indicia of reliability of the broadcast information.  Anderson, 461 Mass. at 621.  Here, the broadcast contained sufficient particularity of the defendant's vehicle's description (including its make, model, color, and registration number) and of the gender and age of the driver.  See Commonwealth v. Depiero, 473 Mass. 450, 454 (2016) (motor vehicle's make, color, and registration number); Anderson, supra at 621 (motor vehicle type, color, and registration number, and gender of occupants).

To determine whether the transmitted information provided by a 911 caller is sufficiently reliable to support reasonable suspicion, we apply the two-pronged Aguilar-Spinelli test; that is, we look to the caller's basis for knowledge as well as the veracity of the source of the information.  Depiero, 473 Mass. at 454.  See Spinelli v. United States, 393 U.S. 410 (1969); Aguilar v. Texas, 378 U.S. 108 (1964).

In this case, the basis of knowledge test is satisfied where the 911 caller reported her firsthand observations (and was, in fact, the victim of the alleged assault). See Anderson, 461 Mass. at 622; Commonwealth v. Alfonso A., 438 Mass. 372, 374-375 (2003).

Establishing the veracity prong where an anonymous 911 caller is involved is less straightforward, as no evidence regarding his or her past reliability or honesty typically will be available. Anderson, supra at 622. See Commonwealth v. Depina, 456 Mass. 238, 243-244 (2010) ("In all but the most extraordinary circumstances, the Commonwealth will be unable to demonstrate that an anonymous source has a prior history of providing accurate information . . ."). Nevertheless, the reliability of such a caller can be demonstrated in other ways.

For example, "[w]e have . . . suggested that the reliability of citizen informants who are identifiable, but may not have been identified, is deserving of greater consideration than that of truly anonymous sources." Commonwealth v. Costa, 448 Mass. 510, 515 (2007). The same is true for callers who are aware that their calls are being recorded and that their telephone numbers can be traced.[1] Id. at 517.

---

[1] We have previously declined to attribute veracity to all anonymous 911 callers based upon the fact that current 911-call technology allows identification of callers. Commonwealth v. Depiero, 473 Mass. 450, 455 (2016). This is because it is the

Even where a 911 telephone call is anonymous, the Commonwealth can still establish a caller's reliability "through independent corroboration by police observation or investigation of the details of the information provided by the caller" prior to the stop being initiated. Anderson, 461 Mass. at 623. Additionally, the Commonwealth may establish the caller's veracity by demonstrating that the caller "had just witnessed a startling or shocking event, that the caller described the event, and that the description of the event was made so quickly in reaction to the event as reasonably to negate the possibility that the caller was falsifying the description or was carrying out a plan falsely to accuse another." Id. at 624.

Here, although the 911 caller testified at trial, she did not testify at the hearing on the motion to suppress, and there was no evidence provided regarding her identity or whether she knew that she was identifiable to police.[2] For this reason, we must treat the caller as anonymous for the purposes of the motion to suppress. Nevertheless, a combination of factors made

_____

caller's belief of anonymity, not his or her actual anonymity, that will predict his or her behavior. Id. Where a caller believes he or she is anonymous, the risk of being criminally charged with false reporting will not deter dishonest reports. Id.

[2] Where, as here, a 911 caller is identifiable, introducing evidence of that fact at the hearing on the motion to suppress would aid the motion judge in assessing the caller's reliability. See Commonwealth v. Gomes, 458 Mass. 1017, 1018 n.5 (2010).

the call reliable under the reasonable suspicion analysis.  See Depiero, 473 Mass. at 454, quoting Commonwealth v. Mubdi, 456 Mass. 385, 396 (2010) (Aguilar-Spinelli test requires "less rigorous showing" where required standard is reasonable suspicion rather than probable cause).

First, the 911 caller was the alleged victim of the assault, and stayed on the line while the information was relayed to the trooper on patrol.  A 911 caller who is willing to stay on the line after reporting a crime perpetrated against her is likely willing to be identified.[3]  A caller who is making a false report is less likely to prolong his or her exposure to charges by remaining on the line with law enforcement.  Cf. Anderson, 461 Mass. at 625 (discussing circumstances that make call less likely to be false report).

Second, the trooper was able to corroborate details provided by the caller prior to the stop, including the make, model, color, and registration number of the vehicle, and the driver's race and gender.  See Costa, 448 Mass. at 518.  See also Depiero, 473 Mass. at 457.

---

[3] The Commonwealth argues that the caller was reliable because she witnessed and quickly described a startling event. See Commonwealth v. Anderson, 461 Mass. 616, 624, cert. denied, 568 U.S. 946 (2012).  However, because no recording of the call or other evidence of the caller's demeanor was presented at the motion hearing, the motion judge could not make any findings regarding the caller's demeanor or whether the caller's statement was an excited utterance.

Finally, the caller reported that a fellow motorist pointed what appeared to be a firearm at her. "The gravity of the crime and the present danger of the circumstances may be considered in the reasonable suspicion calculus." Depina, 456 Mass. at 247. Given the reported assault with a firearm, "the police would have been remiss had they not conducted an investigative stop of [the defendant's] vehicle." Anderson, 461 Mass. at 625. We conclude that the police had reasonable suspicion to justify the stop.

2. Seizure. The defendant argues that upon being stopped by the police, he was illegally arrested and, therefore, the pellet gun subsequently recovered should have been suppressed. This argument has no merit because the actions that the troopers took prior to discovering the pellet gun did not constitute an arrest.[4]

Whether a stop is a seizure, requiring reasonable suspicion, or an arrest, requiring probable cause, depends upon the circumstances of each case. See Commonwealth v. Willis, 415 Mass. 814, 815 (1993) (considering "the highly fact-based question[]" whether stop was arrest). Where a law enforcement officer performs an investigatory stop, that officer's level of intrusiveness must be in proportion to the officer's suspicion

_____

[4] The defendant does not claim error in the arrest that took place after the pellet gun was discovered.

or concern for safety. Commonwealth v. Edwards, 476 Mass. 341, 347 (2017); Commonwealth v. Williams, 422 Mass. 111, 116 (1996); J.A. Grasso & C.M. McEvoy, Suppression Matters Under Massachusetts Law § 4-4 (2014). If an officer exceeds the scope of an investigatory stop, the seizure becomes an arrest. Willis, supra at 819. See Commonwealth v. Melo, 472 Mass. 278, 297-298 (2015) (discussing how police actions can cross line from investigatory stop to arrest).

In this case, Guest learned that a driver had pointed what appeared to be a firearm at another motorist while traveling on the highway. Upon observing a vehicle that matched the description he was given, he stopped the vehicle, and he, along with other State troopers, drew their weapons, ordered the man out of his automobile, and then placed him in a police vehicle.

Given the possible danger to themselves and to the public, each step the troopers took was a "reasonably prudent protective measure[]." Edwards, 476 Mass. at 347. See Commonwealth v. Limone, 460 Mass. 834, 841 (2011); Commonwealth v. Bostock, 450 Mass. 616, 621 (2008) (exit orders permitted in investigatory stops where police are acting "on reasonable suspicion of criminal activity"); Williams, 422 Mass. at 117 (drawing service weapons permitted where officer safety at risk). See also Commonwealth v. Sinforoso, 434 Mass. 320, 325 (2001) (placing suspect in police vehicle alone does not alone amount to arrest;

it may do so where suspect detained for disproportionate period of time); Commonwealth v. Torres, 433 Mass. 669, 675-676 (2001) (patfrisk for weapons requires same standard as exit orders). Taking appropriate precautions does not transform an investigatory stop into an arrest. Commonwealth v. Haskell, 438 Mass. 790, 794 (2003). Commonwealth v. Alvarado, 427 Mass. 277, 284 (1998).

3. Protective sweep. Finally, because the nature of the suspected crime constituted an imminent threat to the safety of the officers, the scope of the sweep of the defendant's vehicle was reasonable and constitutionally justified.

"It is settled . . . that, in appropriate circumstances, a Terry type of search may extend into the interior of an automobile so long as it is limited in scope to a protective end." Commonwealth v. Silva, 366 Mass. 402, 408 (1974). See Alvarado, 427 Mass. at 284. "The issue as to what are the permissible limits has to be decided on the facts of each case." Silva, supra.

In this case, the troopers had reason to believe not only that the defendant possessed a gun, but that he pointed it at another motorist on a busy highway. Thus, upon making the motor vehicle stop, the officers were "warranted in the belief that the[ir] safety . . . or that of other persons was in danger," and therefore appropriately extended the protective sweep into

the defendant's automobile (citations omitted).  See Commonwealth v. Vazquez, 426 Mass. 99, 103 (1997).  Cf. Commonwealth v. Couture, 407 Mass. 178, 183, cert. denied, 498 U.S. 951 (1990) (mere possession of handgun insufficient to give rise to reasonable suspicion of illegal activity).

Even where a protective sweep is permissible, it must be limited in scope.  A protective sweep of a vehicle "'must be confined to the area from which the suspect might gain possession of a weapon,' either because he is still within the vehicle or because he is likely to return to the vehicle at the conclusion of the officer's inquiry."  Commonwealth v. Daniel, 464 Mass. 746, 752 (2013), quoting Commonwealth v. Almeida, 373 Mass. 266, 272 (1977), S.C., 381 Mass. 420 (1980).  This area includes the passenger compartment of a vehicle, as long as police have "a reasonable belief based on 'specific and articulable facts which . . . warrant' the officer in believing that the suspect is dangerous."  Commonwealth v. Sumerlin, 393 Mass. 127, 129 (1984), cert. denied, 469 U.S. 1193 (1985), quoting Michigan v. Long, 463 U.S. 1032, 1049 (1983).

A protective sweep of a passenger compartment may encompass areas that are "generally 'reachable without exiting the vehicle' . . . including areas that are 'hatches,' or rear storage areas."  United States v. Orth, 873 F.3d 349, 358-359 (1st Cir. 2017), quoting United States v. Allen, 469 F.3d 11, 15

(1st Cir. 2006), cert. denied, 552 U.S. 827 (2007).[5]  Here, the pellet gun was found in the rear area of the vehicle.  Taking into account the report of a firearm and the safety threat, the troopers were justified in performing a protective sweep of the entire passenger compartment, including the rear of the vehicle.  See Orth, supra.

Where the police have reasonable suspicion that someone has a gun and has threatened another with it, the protective sweep may also extend to closed containers found within the vehicle's passenger compartment.  Long, 463 U.S. at 1050-1051.  Searchable containers may include "glove compartments, consoles, or other receptacles . . . as well as luggage, boxes, bags, clothing, and the like."  Orth, 873 F.3d at 359, quoting New York v. Belton, 453 U.S. 454, 460-461 n.4 (1981), overruled on other grounds by Davis v. United States, 564 U.S. 229 (2011).  We have held that a protective Terry sweep may include containers where "particular features of the container, readily observable by the

_____

[5] In Allen, the United States Court of Appeals for the First Circuit noted that in the case of Terry-type protective sweeps "post facto scope of search inquiries into the actual reachability of certain areas in a vehicle's passenger compartment are squarely foreclosed."  United States v. Allen, 469 F.3d 11, 15 (1st Cir. 2006), cert. denied, 552 U.S. 827 (2007).  Instead, the question is whether the search area was "generally 'reachable without exiting the vehicle, without regard to the likelihood in the particular case that such a reaching was possible'" (emphasis added).  Id., quoting United States v. Doward, 41 F.3d 789, 794 (1st Cir. 1994), cert. denied, 514 U.S. 1074 (1995).

police, may make it apparent that nothing short of opening the container will suffice to address the officer's reasonable suspicions." Commonwealth v. Pagan, 440 Mass. 62, 72 (2003). See Commonwealth v. Graham, 78 Mass. App. Ct. 127, 129 (2010) ("If safety concerns necessitate doing so, police may open a closed container").

Here, the troopers were justified in opening a case that reasonably could have contained a weapon as a part of the protective sweep. See Silva, 366 Mass. at 410 (finding Terry-type search illegal not because container was opened, but because it was so small that police could not have conceivably believed it contained weapon); Long, 463 U.S. at 1050-1051 (search of leather pouch allowed as it could have contained weapon). Considering the troopers' reasonable suspicion and their immediate concern for their own and the public's safety, the protective sweep performed in this case was permissible.

Conclusion. We conclude that the motion judge properly denied the motion to suppress. Given the information that the police had about the alleged assault committed by the defendant, they had reasonable, articulable suspicion to stop the defendant's motor vehicle and perform a protective sweep of the vehicle. Moreover, given the safety concerns of the police, the scope of the protective sweep was constitutionally justified.

Judgment affirmed.