# United States Court of Appeals

## For the First Circuit

No. 22-1579

UNITED STATES OF AMERICA,

Appellant,

v.

STEVEN POTTER,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Joseph N. Laplante, U.S. District Judge]

Before

Kayatta, Howard, and Montecalvo,
Circuit Judges.

Alexander S. Chen, Assistant United States Attorney, with whom Jane E. Young, United States Attorney and Seth R. Aframe, Assistant United States Attorney, were on brief, for appellant.
Judith Mizner, Assistant Federal Public Defender, for appellee.

August 22, 2023

**HOWARD**, **Circuit Judge**.  In May 2021, a Hooksett, New Hampshire police officer, Nicholas Kapteyn, stopped a vehicle for failure to use a turn signal on a road that narrows from two lanes to one lane.  Steven Potter was a passenger in the car, and the officer soon discovered that Potter had outstanding arrest warrants.  The officer arrested Potter and seized a bag from him, which contained narcotics.  Potter was ultimately charged with possession with intent to distribute controlled substances.

Prior to his trial, Potter filed a motion to suppress the items seized during the traffic stop, arguing that the stop was unlawful because New Hampshire law did not require use of a turn signal at the merge point on the roadway where the vehicle was stopped.  If no turn signal was required, Potter argued, the officer lacked either probable cause to believe that a traffic violation occurred or reasonable suspicion of criminal activity.  The district court granted the motion to suppress, agreeing with Potter that the New Hampshire statute (N.H. Rev. Stat. § 265:45) did not require a turn signal at the merge point.  The government filed an interlocutory appeal of that decision, which is now before us for review.  See 18 U.S.C. § 3731.

**I.**

In reaching its decision, the district court concluded that "[i]n plain terms, the [New Hampshire] signaling statute requires a signal before turning, changing lanes, or starting from

a parked position." United States v. Potter, 610 F. Supp. 3d 402, 410 (D.N.H. 2022). Because the statute enumerates three acts that do require a signal, the court reasoned, the fact that it does not include "merging, moving right or left, or travelling on a roadway that narrows or merges from two lanes into one[] means that the statute does not require drivers to use a signal in these three circumstances." Id. at 411.

In the direction that the vehicle was traveling, the roadway at issue transitions from two lanes to one lane, accompanied by a sign that illustrates an abrupt end to the right lane and dotted lines approaching the point on the sign where the right lane ends. The district court concluded that the sign "does not resemble the actual roadway or the configuration of the narrowing point." Potter, 610 F. Supp. 3d at 408. Rather, it found, the actual roadway "merged two lanes into one," with "merge" "signif[ying] traveling forward on a straight roadway that narrows or blends two lanes into one." Id. at 410. Before conducting the traffic stop, Officer Kapteyn saw the vehicle travelling in the right lane, then saw it "'start[] to merge left or move left' in front of his cruiser after the dotted line distinguishing the two lanes ended, without using a signal." Id. at 408 (alteration in original). The court concluded that this situation did not require the driver to complete a lane change -- a concept the court defined based on "common, ordinary meaning" as "a departure from one lane

- 3 -

and the entry into an adjacent, parallel lane." Id. at 411. Since the maneuver constituted a "merge" instead of a "lane change," no turn signal was required. The district court further concluded that the sign -- which the New Hampshire Department of Safety Division of Motor Vehicles Driver's Manual describes as a warning sign meaning "Lane Ends" -- "cannot serve to reimagine the physical realities of the road" and "is consistent with the court's description of two lanes blending, just as it is consistent with the right lane ending, since the signs as defined in the Driver Manual do[] not draw a distinction between these two scenarios." Id. at 412 n.20. The court also concluded that the statute was unambiguous, so the officer's belief that a turn signal was required was not an objectively reasonable mistake of law. Id. at 423.

On appeal, the government does not challenge the district court's conclusion that a turn signal was not required by law. Instead, it argues that the stop was nevertheless justified because the officer either made a reasonable mistake of fact or a reasonable mistake of law (or both) when concluding that a turn signal was required. We address these arguments in turn, ultimately concluding that the stop was not objectively reasonable.

**II.**

- 4 -

In reviewing a grant of a motion to suppress, we review the district court's legal conclusions de novo and findings of fact for clear error. United States v. Reyes, 24 F.4th 1, 11 (1st Cir. 2022); United States v. Orth, 873 F.3d 349, 353 (1st Cir. 2017).

"A traffic stop for a suspected violation of law is a 'seizure' of the occupants of the vehicle and therefore must be conducted in accordance with the Fourth Amendment." Heien v. North Carolina, 574 U.S. 54, 60 (2014) (citing Brendlin v. California, 551 U.S. 249, 255-59 (2007)). There may not be complete clarity as to whether a stop for a traffic violation must be supported by probable cause or reasonable suspicion. Compare United States v. Miles, 18 F.4th 76, 79 (1st Cir. 2021) (a traffic stop for failing to keep right except to pass "requires, at a bare minimum, 'reasonable suspicion'" (quoting Heien, 574 U.S. at 60)) with Reyes, 24 F.4th at 17 ("the decision to stop an automobile is reasonable" under the Fourth Amendment "[w]here the police have probable cause to believe that a traffic violation has occurred" (quoting Whren v. United States, 517 U.S. 806, 809-10 (1996))).[1]

---

[1] The district court here noted that, "[t]o justify this type of seizure, the traffic stop must either be based on 'probable cause to believe that a traffic violation has occurred' or 'reasonably grounded' suspicion that 'criminal activity is afoot.'" Potter, 610 F. Supp. 3d at 409 (first quoting Whren v. United States, 517 U.S. 806, 810 (1996); and then Arizona v. Johnson, 555 U.S. 323, 330 (2009)). The parties do not dispute this standard.

However, the parties do not debate the standard and we need not address the issue here, given that we ultimately conclude there was no reasonable suspicion for the stop, and a lack of reasonable suspicion necessarily entails a lack of probable cause.

"[S]earches and seizures based on mistakes of fact can be reasonable," so long as the mistake is an objectively reasonable one. Heien, 574 U.S. at 61, 66. Similarly, "reasonable suspicion can rest on a mistaken understanding of the scope of a legal prohibition." Id. at 60. As with mistakes of fact, such mistakes of law must be objectively reasonable -- "an officer can gain no Fourth Amendment advantage through a sloppy study of the laws he is duty-bound to enforce." Id. at 66-67. When determining whether a mistake is objectively reasonable, we "consider the facts available to law enforcement personnel at the time of the [stop]." United States v. Moran, 944 F.3d 1, 7 (1st Cir. 2019).

### A. Mistake of fact

The government argues that it was reasonable for the officer to rely on the traffic sign to conclude that the right lane ended, that the vehicle had to change lanes to remain on the road, and, therefore, that a turn signal was required. In support, it points to two cases in which district courts held that it was reasonable for officers to rely on posted signage when making traffic stops. In United States v. Blackburn, a district court in Oklahoma concluded that it was reasonable for an officer to rely

- 6 -

on a posted speed limit of 45 miles per hour when pulling someone over for driving 52 miles per hour in a construction zone, even though the legal speed limit was officially 75 miles per hour. No. 01-CR-86, 2002 WL 32693714, at \*4 (N.D. Okla. Feb. 20, 2002). The court concluded that it was a reasonable mistake of fact for the officer to believe that the posted speed limit accurately reflected the legal speed limit. Id. Similarly, in United States v. Miles, a Maine district court concluded that it was objectively reasonable for an officer to believe that a "Keep Right Except to Pass" sign was enforceable, whether or not it was. No. 2:18-cr-00144, 2019 WL 3220574, at \*3 & n.3 (D. Me. July 17, 2019).

The government urges that the same reasoning should apply here, given that the meaning of the posted warning sign is "Lane Ends." If it was reasonable for the officer to rely on that sign to assume that the right lane would, in fact, end,[2] the government argues, then it was reasonable for the officer to believe that it was necessary for the vehicle to change lanes from the right lane to the left lane to remain on the road. And if such a "lane change" was required, the reasoning goes, it was

_____

[2] The government makes no argument that the sign both declared which lane ended and trumped any belief to the contrary derived from observation of the actual road itself. Any such argument is therefore waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

- 7 -

reasonable for the officer to believe a turn signal was required under New Hampshire law.

Unlike the cases the government cites in support of its reasoning, however, this case involves a sign that is directly contradicted by the configuration of the actual roadway. In the aforementioned cases, the roadways presented no circumstances that would conflict with the posted signs. There was thus no indication that the posted speed limit or "Keep Right Except to Pass" signs were incorrect. By contrast, here, the district court found that "[t]he sign does not resemble the actual roadway or the configuration of the narrowing point, which does not present a termination of the right lane or require a lane change, abrupt shift, or the crossing of a middle or dotted line." Potter, 610 F. Supp. 3d at 408. The government does not challenge this factual determination.[3] It merely argues that it was reasonable for the officer to rely on the warning sign, even though the roadway presented a different configuration. We find this argument to be unavailing.

---

[3] In its briefing, the government does question some of the district court's factual conclusions. For example, its reply brief asserts that "there is no dispute that . . . the right lane ended," but the district court explicitly found that the road "does not present a termination of the right lane." Potter, 610 F. Supp. 3d at 408. At no point does the government assert that it is arguing for reversal of those factual findings, and it does not argue the clear error standard required for reversal of factual findings, so we decline to disturb the district court's findings of fact.

The government correctly acknowledged at oral argument that there could be a situation in which there is sufficient disparity between a road sign and the realities of the road such that an officer's reliance on the sign would be unreasonable. But that is the situation in this case. The unchallenged factual findings of the district court, based in part on its first-hand "view" of the narrowing point,[4] were that the two northbound lanes of the road "merge together and eventually narrow into a one-lane road," id. at 406; that "[b]efore the dotted line separating the two lanes ends, there is a sign on the right side of the road indicating that the two lanes become one," id.; that "[t]he sign does not resemble the actual roadway or the configuration of the narrowing point," id. at 408; that "nothing like a lane change, or even a traditional merge onto a roadway, is experienced or executed by the driver" when passing through the narrowing point, id. at 412; and that "[a]fter progressing past the end of the divided lanes, a driver just follows the 'outside' lines while continuing in the same direction, as the two lanes gradually and almost imperceptibly blend into one lane," id. The officer here thus had more to rely on than an incorrect traffic sign -- he had a full visual of the realities of the road and even testified to driving

_____

    [4] Prior to the suppression hearing, the court took a "view" of the intersection by driving through it several times. Neither party objected to the court's view or moved to exclude it from consideration.

through the intersection "a lot," so had prior familiarity with the configuration.  When confronted with a warning sign meaning "Lane Ends" that depicted an abrupt end to the right lane and a roadway that, as the district court found, involved a merging of two lanes rather than either lane ending, it was not objectively reasonable for the officer to rely on the sign to govern the factual situation he was encountering.[5]

### B.  Mistake of law

The government next argues that it was a reasonable mistake of law for Officer Kapteyn to believe that a turn signal was required at the merge point.  It argues that the district court, in conducting its analysis, improperly focused on "its notion of the facts (a lane narrowing requiring merging)," when it should have focused on "whether the signaling statute requires a driver to signal when her lane ends, and she must then move into the remaining lane."  In essence, the government is arguing that the officer's mistake of law (in believing that a turn signal was required) was reasonable in light of the officer's mistake of fact (believing that the right lane ended).  However, as we have articulated, the officer's mistake of fact was not a reasonable one given that the configuration of the road did not match the

_____

[5] Indeed, in response to the judge's characterization that it "feels . . . like it's sort of a long slow blend into a single lane," the officer stated that "[i]t does have a similar feeling to that."

- 10 -

sign.  The government meanwhile makes no argument that it would be reasonable to believe the statute requires a turn signal when lanes merely "blend."  Accordingly, because we reject the government's mistake-of-fact argument, we need not address whether any mistake of law was reasonable.

Based on the foregoing, we **affirm** the district court's decision granting Potter's motion to suppress and **remand** the case.